The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. Please be seated and counsel. When you're ready to start. Thank you. May it please the court. My name is David Bungard. I'm here on behalf of the appellant in this case, Mr. Jeffrey Reed and there's several issues we'd like to ask the court to consider today. The first issue concerns, we believe, the district court erred in denying Mr. Reed's Rule 29 motion for judgment of acquittal on Count 1 that charged Mr. Reed with a violation of 18 United States Code 1521, where the false slinging that was prepared and filed by Mr. Reed was against the pseudonym name of T.L. Blake, as opposed to the actual name of the Internal Revenue Service officer who was actually working his collections case. The language of the statute is pretty clear and unambiguous. The criminal liability for this offense attaches to only false slings that are filed against individuals described under 18 United States Code section 1114. Or attempted to be filed against an individual, right? Correct, Your Honor. Correct, Your Honor. But that class is very limited. It only covers federal employees or officers of federal agencies. There's no coverage for criminal liability for false slings filed against private citizens, state employees, or fictitious persons. And the government essentially conceded that point when they charged this case as an attempt offense. I read the statute the same way you do. I don't think it covers fictitious persons. But it seems that this was actually, this lien was filed against, there is a real person. And we know that because the real person tried to get a mortgage and was told that she couldn't because of this false lien. So there's a real person out in the world against whom this lien was filed. Well, Your Honor, to the point that I would go to in terms of a previous court decision that this court made in United States v. Haas, where this court defined, actually looked at the definition of what constitutes an individual and found that it did not apply to a fictitious name, a fictitious person. And I, as I said, I'm starting from the premise, at least for the sake of argument, that this statute doesn't apply to fictitious people. And in Haas, there was no person. It was an entirely invented person. Here, there is a real person. Your client got the name wrong, but the person is the person. I'd ask the court to consider the reason why this statute is in place is to protect actual employees who get liens filed against them, not fictitious names. And what the IRS has done here is basically created a mechanism that protects their employees from having this ever done to them. And with respect to Terry's client's counsel, it was your clients' activities that necessitated the use of the pseudonym. It was for her own protection and for her own safety. She had to use the pseudonym, and it was your clients' misconduct that led to that. Well, Your Honor, as the government points out, the IRS has been using pseudonym names since the mid-1990s. So this is something that they have done for a long time. And the actual statute, when I looked at it for the false lien statute, was passed in 2008. And I would submit that if Congress had intended to provide coverage for fictitious names, that they would have included that within the definition for individual. But in this case, there was no real or personal property of Terry's ship that was affected by this lien. The lien was filed against T.L. Blake, which was a fake name. There was no IRS employee named T.L. Blake. Didn't she testify that when she tried to get a mortgage, this was a problem? But again, there was no real or personal property of hers that was ever affected by the filing of a lien against T.L. Blake. You're saying what she had to do was put up with the harassment that this statute was intended to avoid? Correct, Your Honor. This statute was meant to prohibit people from filing things that affected the actual property of judges, federal employees, and others that are protected within that system. But we believe that Mr. Reed should have a legal impossibility defense here to the extent that the acts that he tended to do, if followed through completion, would not be a crime. So to the extent that filing a false lien against a fictitious name is not a crime. This court recognized that defense in the Hamrick case and recognized that it didn't apply, but I would submit that it was because of the facts of that particular case. Did you object to the jury instruction on this? The jury instruction for count one? Did you ask for instructions about the whole fictitious person theory? We asked for an instruction that it had to be an actual employee, but I don't remember the specific language of the instruction that was given. That had to be a real person. So is there an objection somewhere? I don't believe there's any objections on the jury instructions. We made this objection on a Rule 29 motion. To the legal issue, Your Honor. Okay. So in that regard, there's two circuits out there that have recognized the legal impossibility defense, the Third Circuit and the First Circuit, to the extent that in the Hisu case that I cited in our brief, there was an underlying case of Bergen where a defendant had been convicted of trying to conceal mail getting out of a prison without the warden's consent. But it turned out the warden actually knew about it. So what the defendant intended to do really wasn't a crime. And the other circuit that we cited was their Fernandez decision. This is a really legal impossibility, is it? I mean, it kind of goes back to Judge Harris's point that your client tried to file a lien against the IRS agent who was trying to collect. And if he had succeeded in doing that, it would be a crime. The reason that he didn't quite accomplish what he wanted to was a factual problem, right? He got the name wrong. He used her work pseudonym. But if he was trying to file a lien against a real person who was causing him a problem from his perspective. If the IRS agent had used her actual name, that would be correct. But again, it's our position that using a fictitious name is outside the scope of the definition for an individual. So your position to follow on the comment that Judge Rushings made. Your position is that the IRS is never allowed for purposes of this statute to have an agent adopt a pseudonym. No matter how obstreperous, no matter what the what the kind of threats against that person are, that they just have to sit back and endure it and use their real name. And by using their real name, subject themselves to even more abuse. That's your view, right? No, Your Honor, what I'm saying is there's nothing wrong with the IRS using pseudonym names. The problem is that I think this is the first case that I'm aware of when all the research that I've done on this issue. That the government has ever proceeded to charge someone for filing a false false lien against a pseudonym name as opposed to an actual name of the person. All the cases that we've cited in the past have all involved actual employees and real persons. Because the lien itself is only effective if it actually names a real person. A lien against T.L. Blake does absolutely nothing to harm anybody because T.L. Blake is the person. The point is this is an attempt charge. It seemed to me, set a law that factual impossibility and here the factual impossibility was simply the use of a pseudonym. But factual impossibility is simply not a legal, not a defense to a crime of account. And that seems to me, that is a very subtle proposition, I'm surprised. What was charged was an attempt crime. And the only thing that prevented it was a question of factual impossibility. The fact that the IRS, for good and sufficient reasons, tried to protect the safety of its agents. All that prevented the attempt from being consummated. And the use of this pseudonym is simply created factual impossibility. And that isn't a defense against an attempt crime. That's really, it seems to me that straightforward. I would agree that, Your Honor, the courts have found that attempt is not a defense to a factual impossibility offense is not a defense on an attempt charge. Again, our position is that a legal impossibility defense. Why isn't the use of a pseudonym create factual impossibility? I didn't understand that. The audio on your comment, Your Honor, didn't come through, but I need to proceed to some other issues if I could. The second issue that we'd ask the court to consider, we also filed a Rule 29 motion with respect to count two. And that was where Mr. Reed was charged with under the Omnibus Clause of 26 United States Code 72-12A with impeding and interfering with the administration of justice or the IRS's administration of the Internal Revenue Service Code. The Supreme Court's decision in Maranello limited liability under that type of charge. Specifically, there has to be a nexus charge between the conduct and the particular administrative proceeding. And the court was pretty clear in Maranello that this isn't a catch-all for every potential violation of the Internal Revenue Suite. Sorry to interrupt, but can I take you back to the jury instructions again? And the jury was instructed on exactly that, and there was no objection because it's exactly what you're saying. It has to be a nexus. It can't be just day-to-day routine work. I mean, basically read the case into the jury instructions. So your argument is that the jury was properly instructed on this, but there was not sufficient evidence from which it could have found the necessary nexus? It's a legal argument, Your Honor, yes, that given the type of conduct that was involved here, that this was just a general collections action, a run-of-the-mill collections action. It was instructed. If it's a run-of-the-mill collections action, that's not enough. So this is a sufficiency challenge. Correct, Your Honor. Correct. Yes, and this was brought before this matter was sent to the jury. But again, our position is that this was a run-of-the-mill collections action that was not the type of administrative proceeding that was anticipated by Marinello. Mr. Reed has never been audited by the IRS. He was never investigated for reasons why he wasn't paying taxes. He was not charged with any crimes for failing to file any tax returns. As we mentioned in our prior brief, if you look at the IRX tax data book, in 2020, the number of notice of levies that were filed against third parties that year by the IRS was 396,000. That averages almost 1,000 a day, the types of notices of levies that T.L. Blake sent to the Holiday Inn Lodge to garnish Mr. Reed's wages. Counsel, why wouldn't a jury be entitled to find that this was something more than a routine IRS activity? Because the Marinello opinion gives examples of just a routine investigation or an audit or normal IRS review. But wasn't this something more when the activities here in terms of the liens require the IRS agent to garnish wages and travel to West Virginia and do a whole lot of things that are beyond routine IRS activities? And the question I have is, if Judge Harris correctly says this is a sufficiency question, then why couldn't the jury find that there was a sufficient evidence of nexus and that what was involved was considerably more than the day-to-day routine of IRS employees? This woman had to go to extraordinary lengths, both to protect herself and to collect the taxes. And why couldn't the jury see it that way? Your Honor, we're getting ready to run out of time. Can I proceed to answer that question? Quickly, because you've reserved some time for rebuttal, and I want to make sure you get that. Thank you, Your Honor. Ms. Shipp testified at trial that this was part of her day-to-day duties, that basically what she did 40 hours a week was work on debt collection from taxpayers that owed money. Her involvement in this case, basically she sent letters out to people telling them to pay the garnishment, and if they didn't recognize it, then she'd follow it up with a visit in person to make sure they did it. When the one check was paid, when she got a letter from the hotel that said Mr. Reed was no longer employed there, she basically closed the file and went on to the next case. So there was nothing special in terms of what this agency was doing. Counsel, I understand that, but that's a jury argument, and the jury wasn't required to credit that view of things. It's not, this isn't a question, it's a sufficiency question, and the jury wasn't required to credit that particular description. But at any rate, Counsel, I want to make sure you have some time for rebuttal. Can you take up some of these matters when you come on for rebuttal? Yes, I will, Your Honor. Thank you. All right, let's go with Mr. Goes. We can hear you, sir. Thank you, Your Honor. May it please the Court, Eric Goes on behalf of the United States. Reed's conviction and sentence should be affirmed in this case. Reed intentionally filed a $5 million fraudulent lien against a revenue officer. She was a real person. She testified under her own name. She was permitted to use an agency pseudonym, and 1521 was specifically designed and passed so that judges, prosecutors, and federal employees are not to be targeted by liens. And the targeting is broad enough with the inclusion of the words attempt and the inclusion of the words conspiracy that it does not have to be successfully completed. The intent alone is enough to complete the act, and that's exactly what he intended. He intended to target this specific revenue officer. He knew she was a revenue officer, and he targeted her specifically for the course of her conduct. He made a mistake. The mistake was a mistake, in fact. He got the name wrong because she is permitted to use a pseudonym. That wasn't something she made up. That is a governmental policy to protect agents, and specifically, she was in the ATTAC group, the Abusive Tax and Avoidance Transaction group. So the case had already been through regular channels in trying to collect the back taxes from Reed, and that's where she kicked in. And the efforts that she made were extraordinary, but the use of the pseudonym does not give him a free pass to just file fraudulent liens. Now, we don't necessarily have to show the harm, but there was the pseudonym. The use of the pseudonym could defeat this kind of claim if the pseudonym, for example, wasn't tied specific to a specific individual, could it not? Yes. Yes, Your Honor. And taking Judge Harris's point, if this is not including fictitious or entirely made up persons. What you're saying is there is a difference between a pseudonym, a fictitious pseudonym, and a fictitious person. That's right, Your Honor. And in this case, the evidence was clear, certainly beyond a reasonable doubt. She was a real person, and she was acting in the scope of her duty.  So this fits squarely within an attempt, and that was the intent, to avoid the harassment and avoid the transaction. Counsel, just so I understand, so the government, as you see the case, there was just an attempt here. There was no completed crime. We charged it as an attempt out of an abundance of caution for the exact fear that this, well, I don't want to say fear, but the concern this court raised. If it was a completed act, we didn't want to necessarily say, well, aha, this works. And we, upon reading this court's decisions and attempt law and the jury instructions, we thought… Yeah, I'm just trying to figure out whether because there was this thing where I think you were about to say she did testify to actual harm. I'm just, I'm not trying to push you on anything. I'm just trying to figure out, in this case, like the pseudonym, it turns out it provided somewhat imperfect protection. Your Honor, we analyzed that, and there was at least one theory where we could have treated this as a completed crime. Okay, but you're going with the… We went with the attempt crime because we thought that that more accurately captured the conduct, and it also solved whether this use of a pseudonym is a means of identification or an individual. We knew clearly she was an individual. Now, I'd like to turn a little bit to the Marinello nexus. Well, I'm sorry. I want to make sure. This was a factual mistake. He thought that was her name. He targeted her specifically for that name. It clearly was a factual mistake. A legal defense doesn't apply here. This law had not been repealed, and that's pretty clear that he intentionally targeted her, making a factual error. Legal defense is not available to this court. Can I ask you just one other clarifying question on this first point? Is this a statutory construction question that we're reviewing de novo, or is this a sufficiency challenge on the first count? Well, actually, I guess it's a hybrid of that, Your Honor. It is going to be an issue of statutory construction, which the court does review de novo. But in terms of a sufficiency challenge, the jury heard whether this person was an individual. As the court correctly noted, they were instructed as to what an individual is. There was no objection to that instruction. I double-checked before I got behind the podium, and that in itself would have at least been a factor for the jury to consider. But, again, she testified as a real person. She was not a fictitious. So the nexus question is a sufficiency challenge, isn't it? Yes, Your Honor. Again, under the framework of the court is going to review the statute itself. But the Marinello standard calls for a nexus. In this case, the principal evil of Marinello — It's a little thing I can probably figure out on my own, but maybe you can help me out on it. So I agree with you that on count two, this is obviously just a sufficiency challenge. The jury was instructed, instructed properly. And now the question is, was there enough evidence from which the jury could find, as it was instructed, that there needed to be a nexus? Why is the first count different? Was there like an objection to the jury instructions? To the first count, Your Honor? On the first count, yeah. There was not an objection to the jury instructions. We did have a pretrial hearing where this argument was raised. But there was not an objection to this jury instruction that I could find. I checked hastily. I guess I wonder why the first one isn't just a sufficiency challenge, too. I mean, the jury was instructed. It has to be an officer or employee of the United States. The jury found it was. It well could be, Your Honor. But as you framed your question to me as a question of statutory interpretation, I knew the answer to that is a de novo review. So I did not want to mislead the court. But let's talk a little bit about the nexus. The defendant admitted the nexus when he gave his statement to the agents. He specifically told the agents he filed the lien against the IRS agent for the purpose of preventing the IRS from collecting the taxes. The principal evil of Marinello is satisfied. As to whether it was a routine election activity, the agent said it was a targeted investigation. And that's what Marinello calls for, a targeted administrative action. Now, those are the words she used when she testified, a targeted or an administrative action. But what this court's going to look to is not what words we use. It's what what was her conduct. What did she do? She sent the letter. He sent it back, refusing to pay yet again. Remember, he owes hundreds of thousands of dollars in taxes. They've been trying to collect for him for years. So then she travels to West Virginia. She walks through the garnishment process. Reid tries to thwart the garnishment process by demanding that the hotel owner send a letter on his behalf. She refuses. The hotel owner actually calls the agent. So this is far and above the normal routine day-to-day work such as preparing or reviewing tax returns. So when Justice Breyer wrote that example of review of tax returns, that was the example he set out, he set forth. This is so much more than that. And like the Graham decision from the 11th Circuit, their language is just perfect. They said this is not a borderline case. That's what they said in Graham. This isn't a close case. There could be a close case where an innocent taxpayer sends back a letter or something like that. That's the evil that Marinello has designed. How many returns are there? Are there any tax returns here? Respectfully, Your Honor, your question broke up. How many returns are there? How many returns were there? How many tax returns were there? He had not paid taxes since 1995. So the case dated all the way back to 1995. Now, we were precluded from introducing some of that because the district judge thought he didn't want to risk a 403. So some of that was blacked out. But there is, at the very least, in U.S. Exhibit No. 3, a letter that says since 2013 they'd been specifically targeting him as a targeted administrative action to try to get him to pay taxes. But, Your Honor, he had not paid taxes since 1995. So I guess the specific answer is all the way back to 1995. I want to make sure I've answered the question. So we cited the Graham case. We cited the Preligar case also as support for what constitutes non-borderline cases. This defendant's conduct is not borderline. It was an exceptional activity from the IRS, his abusive conduct in trying to obstruct. And, again, the notice of levy, the opportunity to cure, I wanted to specifically highlight not only the $5 million fraudulent lien that tried to take all of the agent's property, exempting only her photographs, wedding rings, and survival rations, whatever he meant by that, but also the $9 million copyright that he sent to her. And, remember, he didn't just file this lien against her. He also sent the notice of default, the opportunity to cure to her supervisors at the IRS. He sent information to various bonding, the insurance commissioners in four different states. This was all intentionally designed as a months-long harassment campaign specifically against this agent and also the owner of the hotel, all designed to thwart. So this fits 26 U.S.C. 72-12 like a glove. This is exactly what that statute is designed to prevent. And like Graham, like Preligar, this is not a closed case. There could well be a closed case, but this is not a routine review of tax returns. And the reason is because of Reed, because of Reed's conduct. And, finally, I wanted to turn a little bit to whether— One second. Oh, I'm sorry, Your Honor. No problem. The defendant seems to interpret Maranello to mean if this is any agent's day-to-day work, that Maranello means it's routine. They use some of this language. It's not the day-to-day routine work. And she testified that in this special division, you know, most of what she does is this sort of work. Do you think that's what Maranello means? And what's your response to that? Well, her testimony in cross-examination was—I mean, she said this was a targeted administrative investigation. And she said this was her day-to-day activity. But that was her day-to-day within the abusive tax and avoidance transaction group. So the case had been transferred, Reed's case, to specifically try to collect taxes from someone they knew was going to subject them to harassment or to targeting. So that part of it could well be a factual determination from—for the jury to decide whether this is routine day-to-day work. But our response would be what her specific conduct is were the facts in this case. And the facts in this case show that this was not just a routine day-to-day collection. It's not routine tax collection for the agency, even if there are special employees who are specifically assigned to handle the difficult abusive cases, right? That's right, Your Honor. And we're not asking for a bright-line rule. For instance, if she had just sent him the letter and that had been it, perhaps that would have been closer to the concern that Marinello was raising of what's a review of tax returns. But again, we're not there on this case. This isn't a close case. It wasn't just the review of tax returns. It was the letter. It was coming back. Counsel, how could it be just a routine review of tax returns if there are no tax returns? They had—what the IRS had done in that case, Your Honor, and I've got to be careful because this is a little beyond the record, but what they had done in this case was they had come up with estimates and tried to recreate some work history for him. Again, we did not put that on the record in this case. We were not permitted to. I did want to turn to whether the district court—the district court didn't commit three clear error when it applied three enhancements. There was an intent to carry out a threat. That was the enhancement directed against the agent. There was a threat to damage the property, and there was extensive planning and preparation. The two-level enhancement for extensive planning and preparation is, frankly, pretty straightforward. The district court didn't commit clear error to show this defendant's months-long campaign harassment, which required letters, physical preparation, mailings, looking up who the supervisors were at the IRS, double-checking—some of this lean language takes a while to just even physically figure out what he's talking about. So this is extensive, and it's certainly not clear error to show that it showed effort, research, and planning by him. And in terms of Reed's conduct to damage property, I wanted to turn to that briefly. Property damage can be more than physical property damage. That issue was raised, and that's kind of an issue of interpretation of the guidelines. It's physical injury to a person, comma, or property damage. Now, when you turn to the comment, it doesn't define property damage other than it says it can include cause or threaten to damage property. So the Reed case, confusingly, from the Eighth Circuit, is on point, and it's a tour de force of explaining liens and how liens can damage property, and it cites the Permanent Mission of India case, which is the United States Supreme Court, saying, that gunna liens damage property. Liens are property damage. So when this court applied that, he's applying fairly settled law, the Supreme Court, the Reed opinion, to say this eight-level enhancement. And finally, Reed— I think you would agree, or maybe do you agree, it's not sort of the first thing one would think of in this context. You'd think of more like, you know, do it or I'll burn your house down, not do it or I'll file a lien against you. That's right, Your Honor. In fact, I even put that on the record. I commended the probation department for thinking of that because I was thinking physical damage as well. And sometimes the probation department spots things we don't, and they were right. And I don't want to say I was wrong. I didn't object to it, but they were spot on. And again, once you—I have to train myself to read about liens, and some of that can get very technical. But again, I can defer to the United States Supreme Court and the many, many page opinion in Reed explaining it all and saying X equals Y equals this enhancement applies. Regardless, the district court didn't commit clear error in applying it. Finally, threats can be broader than a physical threat. The court applied a six-level enhancement. When he applied that six-level enhancement, the Jordan case is nearly on point to the facts of this case. And the Fourth Circuit, in the Gary opinion, has specifically held—the Gary opinion has specifically held that because threat is undefined, it can be broader and include conduct before and after. The district court found— Through all of this, counsel, all of this is subject to a clearly erroneous standard of review. I mean, whether something is a threat or whether it's not, you know, some cases, yes, it's a threat. Other cases, no, it's not a threat. But this is, you know, the standard is clearly—is plainly a clearly erroneous standard. And it was—how could the district court be clearly erroneous? The agent certainly perceived it as a threat. And if, you know, the whole idea is if you don't back off, you're going to get—we're going to throw more liens at you. And that was perceived as a threat. And, of course, these things inflicted property damage because their liens are widely recorded. Creditors research them. Creditors deny loans and all kinds of things because their lien's outstanding. And that's the whole purpose of the lien is to inflict damage and to threaten further damage if the tax collector didn't desist and back off. And it's all subject to a clearly erroneous standard. Yes, Your Honor. And that's exactly what the district court did in this case. And that was exactly Reed's intent. And, nevertheless, Reed still received a below-guideline sentence from the district court. The district court was correct. This defendant was a paper terrorist. He specifically designed to target the owner of the hotel and the tax collection agent in this abusive retaliation scheme. We think the conviction was exactly correct. We think the enhancements were exactly correct. We would ask this court to affirm both the conviction and the sentencing in this case. Thank you, Your Honor. We thank you. And, counsel, Mr. Lungard, you have some rebuttal, and we'd be happy to hear from you in rebuttal. Thank you, Your Honor. I first want to start, I believe I must go to one of Judge Harris's questions in regards to T.L. Blake. The purpose of the false lien statute is to protect federal employees who get liens filed against their real or personal property. In this case, it doesn't extend. I think that it would be an oversight to say that extends to protecting federal employees who go out and try to apply for property, and they have to ask if they've ever had a pseudonym name they've used in the past. I don't think the statute was meant to cover that. It was only meant to cover real and personal property that the person actually has, not something that they may go out and buy in the future. So, to that extent, I just wanted to make sure I was clear on my point. The remaining arguments that we have, and, again, this is under the presumption that if the court finds that an attempt can be made, an attempt prosecution can be made in this case with a pseudonym name, that there were still three errors that were committed in the guideline calculation that was done by the district court. And with respect to the first error, I believe this is the district court error in the interpretation, in the legal interpretation of the guideline under 2A6.1B1 in providing a six offense level enhancement for engaging in conduct, evidencing an intent to carry out a threat. The court based this upon the copies of documents that Mr. before the actual lien got filed in circuit court. To that extent, all those documents that were sent to the IRS basically said the same thing with respect to how T.L. Blake was named. And I think it's important to note that Mr. Reed had no personal interactions with T.L. Blake. She never picked up the phone and actually had a conversation with him, never met him in person. But her name was on everything that he saw. That's the only thing. That's the only reason why he used T.L. Blake. But if she had done what you suggested, would that not have subjected her to even more abuse and harassment? She used the pseudonym name that she was allowed to use by the IRS. There's no question that she used that name and not her real name. But the issue is here is that all of those documents contained information or allegations with respect to T.L. Blake, not Terry Shipp. So the fact that he was claiming he was going to file lien against this fictitious person, it was not a threat against any real or personal property because T.L. Blake, the name T.L. Blake does not have any real or personal property attached to it. And again, I think with respect to this guideline enhancement, the whole purposes of having offense level enhancements are to punish persons who commit conduct that's aggravating or basically, in this case, this was not a completed offense. So to that extent that it was an attempt that there was no intent to carry out a threat because the documents that he sent to the IRS ahead of time did not contain any threats against any particular person, only that fictitious name. Well, the threat can be an implied threat. It doesn't have to have some sort of quid pro quo language that if you do this, I'm going to do that. A lot of threats and some of the worst are implicit. But the question is, it's all factual. And is there some basis for the district court's view that this was a definite threat? I don't see how the IRS agent in this case could have perceived it reasonably perceived it as anything other than a threat. Actually, the record states otherwise. I think if you look at what happened when these documents were sent and received by agent ship, she took no action against Mr. Reid. All she did was basically put him in a file. There was no I remember in the transcript. This is exactly the argument you made to the district court. And the district court was like, no, like, this is very speculative how they treated it. And this just sounds like a factual argument that you made to the district court that the district court rejected. And I guess I mean, there's nothing wrong with making the same argument now. But now we have this very generous standard of review when it comes to a factual determination by a district court that, no, these actually did constitute threats. Well, I guess I go back to that. The documents themselves did not contain a threat because it wasn't threatening specifically to to Terry ship. It was to this fictitious named T.L. Blake. And the second argument that I have, and I'm running out of time, your honor, if I could proceed with your permission. Yes, please proceed. The the the other error with with the base offense level calculation was with respect to the count to the plus eight enhancement under 2J1.2B2 for, again, threatening to cause property damage. And again, the same argument I would make here is that if the government is proceeding with an attempt theory here, there was nothing. The government presented no evidence at sentencing that there was any particular real property or personal property of T.L. ship that had someone has a property interest in their own being. And what you did was by filing these liens, you limited the amount of flexibility and the freedom that this individual possessed to to get loans and everything. You subjected her to scrutiny by creditors and everything. And that's a property interest. It's plainly damaged by the by the filing of these liens. Nobody, nobody I know has advanced the argument that a lien enhances the value of property. And in in this case, it limited the freedom of the agent to engage in all kinds of financial transactions because the creditors that are looking at those liens, they don't know the whole background of this. They just see the the final bottom line, which were that liens were filed against this individual. And that's a red flag for creditors. They don't have the time to investigate why the lien was filed or what purpose was filed. Creditors, banks, loan officers, they just say, whoa, no, this, this, there's this lien on file. It's a red flag. And then they're going to not advance the loan. So that's that is acute property damage. And any individual that has liens slapped on them, particularly liens of this nature, would would would tell you in an instant that it could it diminishes their commercial freedom to engage in transactions to which they are entitled to engage. Just to respond, again, that the the name that was used in this case was not Ms. Shipps. She used a fictitious name and that there was it's our position that at sentencing and throughout the whole trial, the government did not present any evidence that any specific real or personal property of that Teal Blake, that name was ever harmed, damaged or threatened to be damaged. All right, counsel, thank thank you very much. If either of my colleagues has any further questions, we can wait. Otherwise, I want to thank you and Mr. Gose for your argument and tell you both how much how very much we appreciate it. Thank you, Your Honor. Thank you.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Allison J. Rushing